**FILED**
DISTRICT COURT OF GUAM

# UNITED STATES DISTRICT COURT

for the

District of Guam

DEC 03 2024
ODP
**JEANNE G. QUINATA**
**CLERK OF COURT**

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

Black Samsung Galaxy Z Fold Cellular Phone (See Attachment A)

)
)
)
)
)

Case No. MJ- 24 - 00146

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Black Samsung Galaxy Z Fold Cellular Phone. Property is further described in Attachment A.

located in the _____ District of _____ Guam _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B which is incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. §§ 841(a)(1) and 846 | Distribution of Methamphetamine |

The application is based on these facts:

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

LIU HONG JIANG, FBI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

RSN

Date: 12/3/24

_____
*Judge's signature*

City and state: Hagatna, Guam

Hon. Michael J. Bordallo, Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Liu Hong Jiang, being duly sworn, hereby depose and state as follows:

### A.   Background of Affiant

1.      I am a Special Agent of the Federal Bureau of Investigation ("FBI"), United States Department of Justice, and, as such, I am an investigative or law enforcement officer within the meaning of the Title 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18 U.S.C. § 2516. I am currently employed as a Special Agent with the FBI and have been so employed since August 2005. From 2005 to 2019, I was assigned to Washington Field Office where I investigated cyber intrusions, white collar crimes, and national security matters. I am presently assigned to the Guam Resident Agency of the FBI since 2019, where I investigate violations of federal criminal law. My current job assignment includes, but is not limited to, the investigations of violations of Title 21 U.S.C. §§ 841(a)(1), 846, 843(b) and 856, which includes the detection, identification, and apprehension of those individuals involved in narcotics trafficking offenses. I have gained experience and knowledge through training and everyday work related to conducting these types of investigations.

2.      I have participated in investigations of criminal violations of the Federal Controlled Substances Act. I have also participated in undercover investigations involving the purchase of controlled substances, assisted in the execution of federal search warrants relating to controlled substances and have conducted surveillance and controlled deliveries in connection with narcotic investigations.

3.      I am familiar with the operation of illegal drug trafficking organizations ("DTOs") in the United States and DTOs with a foreign nexus. Based on my training, experience, and

1

discussions with other law enforcement officers, I am aware that criminals often use cellular phones to communicate instructions, plans, and intentions to their criminal associates and to report on the progress of their criminal activities. I am aware that evidence of these instructions, plans, intention, reports and general discussions of criminal activity are sent or received in the form of short message service ("SMS") text messages, incoming and outgoing call histories, or voice messages left in personal voice mail systems. I am familiar in the methods in which text messages are sent and received via third party phone applications, most commonly referred to as "Apps" which are widely used.

4.      Based on my training, experience and the investigation in this case, I am aware that "WeChat" is a free Chinese social media app that is widely used to send text messages, make calls, and chat, this app can be downloaded onto mobile devices.

5.      The information contained within this affidavit is based upon my personal observations, training, and on information related to me by other law enforcement officers and investigators as set forth more fully herein. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Because the purpose of this affidavit is to set forth probable cause, your affiant has not included each and every fact known to the affiant in connection with this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of the violations of Title 21 U.S.C. §§ 841(a)(1) and 846 are associated with a Samsung cellular phone described as a black Samsung Galaxy Z Fold cellular phone, hereinafter referred to as a "SUBJECT DEVICE," said cellular phone was seized from BENZHE SHAO a/k/a BEN ZHE SHAO a/k/a "Tiger" and is currently in the custody of the Federal Bureau of Investigation. described in Attachment A. In my training and experience, I

2

know that the SUBJECT DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when SUBJECT DEVICE first came into the possession of the FBI.

6.     This case is being investigated by the FBI in Guam, and is based on my personal participation in this investigation; reports made and/or provided to me by other federal agents and law enforcement authorities; my training and experience; and information provided by witnesses discussed in more detail below.  Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement was made by other law enforcement officers (who may have had either direct or hearsay knowledge of that statement) to whom myself or other law enforcement officers have spoken or whose reports I have read and reviewed.  Such statements are reported in substance and in part, unless otherwise indicated.  This affidavit is intended to show merely there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

**B.     Purpose of Affidavit**

7.     This affidavit is made in support of the issuance of a search warrant for a black Samsung Galaxy Z Fold cellular phone, hereinafter referred to as "SUBJECT DEVICE," seized from BENZHE SHAO a/k/a BENZHE SHAO a/k/a "Tiger."  SUBJECT DEVICE is currently stored at FBI Guam Headquarters.  In my training and experience, I know that the SUBJECT DEVICE has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as it was when the SUBJECT DEVICE first came into the possession of the FBI, Attachment A.

8.     Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.

3

I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846, Distribution of Methamphetamine, are presently located on SUBJECT DEVICE.

9.    Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21 U.S.C. §§ 846 and 841(a)(1), conspiracy to distribute methamphetamine, have been committed by Benzhe SHAO a/k/a "Tiger" ("SHAO") utilizing SUBJECT DEVICE, and I believe there is probable cause to search the property described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

C.    **Jurisdiction**

10.    This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18 U.S.C. § 2711(3), 18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A). Specifically, the court is "a district court of the United States... that has jurisdiction over the offense being investigated." Title 18 U.S.C. § 2711(3)(A)(i) and "is in ... a district in which the provider ... is located or in which the wire or electronic communications, records, or other information are stored." 18 U.S.C. § 2711 (3)(A)(ii).

D.    **Facts Establishing Probable Cause**

11.    On or about June 27, 2024, the FBI conducted an investigation of a cooperating defendant. On June 27, 2024, the cooperating defendant was debriefed in person by special agents with the FBI. The cooperating defendant provided information about Chinese nationals who were involved in his/her drug distribution network. The cooperating defendant stated that some of the Chinese nationals are located in the Northern Mariana Islands and some of them are in Guam. The cooperating defendant reported that SHAO is one of the individuals in this drug distribution

4

network and that SHAO is currently on Guam. The cooperating defendant stated that SHAO is also in possession of approximately two (2) kilograms of methamphetamine.

12.     Based on the cooperating defendant information, I obtained SHAO's cellular number, **(671) 797-9395**, through record checks, and personally contacted SHAO on Guam via telephone.

13.     On or about three dates, July 24, 2024, July 29, 2024 and August 27, 2024, I interviewed SHAO. During these meetings, SHAO confirmed that the telephone **(671) 797-9395** is his cellphone number. SHAO also provided further information that his email is maxtiger-888@outlook.com, his date of birth is 11/16/1986, and that his place of birth is Dalian city, Liaoning province, People's Republic of China. SHAO verified that he currently lives at Ocean View Apartments, in Tamuning Guam, which is located across the street from the Guam Telephone Authority ("GTA") offices in Tamuning, Guam. SHAO resides at the Ocean View Apartments, Unit 12, located on the second floor, third door from the right. SHAO stated that he lives at this apartment with his girlfriend, identified to be Guihua GUO. SHAO stated that he previously resided on Saipan from on or about April, 2018 to on or about June, 2023.

14.     During the July 24, 2024 interview, SHAO explained his involvement with the cooperating defendant's drug distribution network. SHAO stated that in October 2022, when SHAO was in Saipan, the cooperating defendant offered to supply methamphetamine for him (SHAO) to sell. SHAO stated that after much negotiation with the cooperating defendant, they agreed that the cooperating defendant would initially supply SHAO with two hundred (200) grams of methamphetamine at $80.00 per gram. SHAO stated that he would then sell the methamphetamine to his street sellers at an increased price of $160 per gram. SHAO stated that his street sellers would in turn sell the methamphetamine for $220 per gram. This arrangement

5

with the cooperating defendant lasted approximately three months from October 2022 to December 2022.

15.     SHAO explained that around the end of 2022, the cooperating defendant learned he was wanted by the Northern Marianas Islands Department of Safety ("DPS") for the offenses of Theft, Trafficking, and Illegal Possession of Controlled Substance. SHAO stated that subsequently, the cooperating defendant went into hiding. The cooperating defendant then contacted SHAO stating he/she was in need of cash and pushed SHAO for money. At the time, SHAO owed the cooperating defendant money for approximately 400 grams of methamphetamine. SHAO and the cooperating defendant had an argument over the money. SHAO related he decided not to pay the cooperating defendant. SHAO stated the cooperating defendant then posted messages on a Chinese "WeChat" group threatening to harm SHAO. SHAO then decided to leave Saipan for Guam. SHAO paid a Saipan resident to transport him and his girlfriend from Saipan to Guam via boat. SHAO and his girlfriend Guihua GUO arrived on Guam on or about June, 2023.

16.     SHAO stated he cut off contact with the cooperating defendant but soon find out that the cooperating defendant also came to Guam via boat. SHAO learned that the cooperating defendant was looking for SHAO in order to collect the money owed to him/her.

17.     SHAO related that on or about October 2023, SHAO worked on Guam as a driver for an elder Taiwanese man for one day. At the end of the day, SHAO dropped off the elder Taiwanese man off at his residence. SHAO stated that the cooperating defendant unexpectedly emerged from one of the rooms and SHAO panicked and pulled out a knife. SHAO stated that the cooperating defendant shot SHAO at close range and the bullet grazed his (SHAO's) head. SHAO related that the cooperating defendant subdued SHAO and detained him in the Taiwanese man's residence for three days. SHAO related he was only able to secure his release after he paid the

6

cooperating defendant $10,000.00 and $400,000.00 in Chinese Yen and promised to continue to sell drugs for the cooperating defendant. SHAO related that a female witness, Wang Jing and the elder Taiwanese man were present and witnessed this assault. SHAO stated that he has a scar on the left side of his head from the assault and that while he was tied up, that the cooperating defendant took a photograph of him (SHAO) bleeding and tied up.

18.     SHAO related that after this October 2023 assault, he was "controlled" by the cooperating defendant and made to sell methamphetamine for the cooperating defendant. SHAO stated during this time, he continued to communicate with the cooperating defendant using WeChat. SHAO also stated that he deleted his conversations with the cooperating defendant but still retained the cooperating defendant's WeChat account name and number on his cellular phone.

19.     SHAO stated that in late 2023, the cooperating defendant directed SHAO to pick up approximately one kilogram of methamphetamine. SHAO stated that pictures of the pick up location ("drop dead location") were sent from the cooperating defendant's cell phone to SHAO's cell phone **(671) 797-9395** via the WeChat application.

20.     SHAO stated that he drove to three "dead drop" locations in Yigo and Hagatna and recovered methamphetamine which was packaged within plastic PVC pipes. SHAO stated he initially hid the methamphetamine in several locations before eventually bringing the drug back to his residence. SHAO stated that he then learned the cooperating defendant was arrested and extradited back to Saipan. SHAO stated he then tossed the methamphetamine (placed in a clear plastic bag and a light blue tote bag) into the woods behind the Oceanview Apartment. SHAO then used Google Maps to show the Agents the location of the methamphetamine.

21.     On July 25, 2024, based on the information above, Special Agents with the FBI and Homeland Security Investigations went to the wooded area behind Ocean View Apartments and

7

recovered a plastic shopping bag that contained packages of suspected methamphetamine weighing approximately 1,565 gross grams (approximately 1.5 kg). The plastic shopping bag and its contents were presented to Guam Airport Police drug K-9 resulting in a positive alert. The suspected methamphetamine was subjected to a field test at the FBI Guam office resulting in a presumptive positive result methamphetamine. The suspected methamphetamine is presently in the custody of the United States Postal Inspection Service ("USPIS") laboratory pending further analysis.

22.     On August 14, 2024, your affiant re-interviewed SHAO. SHAO provided a photograph, purportedly taken by the cooperating defendant on October 2023, during the time SHAO was forcibly detained by the cooperating defendant. SHAO stated that the photograph was circulated by the cooperating defendant on WeChat. SHAO provided further information, explaining that the methamphetamine sent to the cooperating defendant from Saipan arrived through U.S. postal packages.

23.     On August 29, 2024, FBI re-interviewed SHAO. SHAO related that the cooperating defendant called him wanting to pick up the money from the drug sales. SHAO informed the cooperating defendant that he threw away the drugs. SHAO was then contacted on WeChat by an individual named Han Dong, who traveled from Saipan to Guam to collect money on behalf of the cooperating defendant. SHAO informed Han Dong that he did not have the drugs nor any money. During this August 29, 2024 interview, SHAO informed the FBI that the PVC pipes where the methamphetamine was originally stored are still at his Oceanview Apartment and that he is willing to turn them over to the FBI.

24.     On September 18, 2024, I conducted a record check and verified that IT&E is the phone carrier and service provider for cellular phone number **(671) 797-9395**. On this date, I

served a preservation letter on IT&E to preserve the account for ninety (90) days.

25.    On October 1, 2024, FBI met with SHAO at his apartment unit 12, Ocean View Apartment. SHAO turned over five (5) black PVC pipes stored in SHAO's car. SHAO and agents then drove to the residence where the cooperating defendant shot and detained SHAO. SHAO provided a hand drawing map of interior of the house. SHAO indicated the shooting happened in the second bedroom on the left side of the house, the bullet hit the wall next to the window and left a dent on the wall. The residence is described as one floor single family housing with number 141 out in the front gate, located on Pagat Route 15, Google map pin: 13.529735, 144.903179.

26.    On October 11, 2024, the Court issued a search warrant (MJ 24-00125) to search Information associated with (671) 797-9395 stored at PTI Pacifica, Inc. dba IT&E, 122 West Harmon Industrial Park Road, Tamuning, Guam. On October 25, 2024, IT&E produced records included subscriber information, text messages, and call records.

27.    A review of the information revealed a July 28, 2023 message sent from (671) 797-9395 to (670) 287-7207 stating "This is my new number." "This is tiger." "This is my new number Tiger."

| 16702877207 | 16717979395 | This my new number |
| 16702877207 | 16717979395 | This is tiger |
| 16702876664 | 16717979395 | This is my new number Tiger |
| 16717979395 | 16702877207 | Ok, why duck not same? |
| 16702877207 | 16717979395 | That's impossible. My partner hasn't changed. |
| 16702877207 | 16717979395 | I need you to tell me what's going on |
| 16717979395 | 16702877207 | Last time u give me is good. Ny people saying this one I got is not that good. Ill find more and tell u okay. |
| 16702877207 | 16717979395 | How much need not need to be replaced. It's the same every time. But next time I'll talk to the guys down there. |
| 16702877207 | 16717979395 | How many more? Do you need to replace it? It's the same every time. But next time I'll talk to the guys down there. |
| 16717979395 | 16702877207 | I'll jus try and finish it. I'll let u know if I need to replace. |
| 16702877207 | 16717979395 | Can you ask around for me, see if there's a problem? |
| 16702877207 | 16717979395 | You really are my family, and I am so honored! I'll be here when you get back, and we'll have some fun. |
| 16702877207 | 16717979395 | Can I give you a lot of ducks now? |
| 16717979395 | 16702877207 | No problem. Take care. |
| 16719776364 | 16717979395 | This is Tiger  my new number |

28.    On October 24, 2024, a federal grand jury returned an Indictment in Criminal Case

9

No. 24-CR-00027-001, charging BENZHE SHAO a/k/a BEN ZHE SHAO a/k/a "Tiger" with one count of Possession With Intent to Distribute Fifty Grams or More of Methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(viii) and 18 U.S.C. § 2. The Court issued a Warrant for his arrest.

29.     On October 30, 2024, Agents with the Federal Bureau of Investigations arrested BENZHE SHAO a/k/a BEN ZHE SHAO a/k/a "Tiger." At time of arrest, he was in possession of a cell phone, described as a black Samsung Galaxy Z Fold cellular phone. The cell phone is presently in the custody of the Federal Bureau of Investigations.

30.     On October 31, 2024, the Court held an Arraignment hearing for BENZHE SHAO a/k/a BEN ZHE SHAO a/k/a "Tiger," scheduled jury selection and trial for January 4, 2025, and released the Defendant with conditions.

31.     I know importers and distributors of controlled substances (specifically methamphetamine) coordinate the importation, transportation, ordering, purchasing and the distribution of controlled substances and proceeds from the sales of controlled substances via cellular telephones. I am aware that criminals often use cellular phones to communicate instructions, plans, and intentions to their criminal associates and to report on the progress of their criminal activities. I am aware that criminal associates often will send pictures and videos of drug or drug proceeds to their criminal associates. Additionally, criminals will save pictures of drugs and drug proceeds as "trophy shots" detailing their drug activity. Specifically, I believe, based on the investigation and my training and experience, that SHAO, is utilizing cellular phone number **(671) 797-9395** to coordinate drug transactions with his supplier and buyers. I also believe the cellular telephone might contain evidence regarding other methamphetamine trafficking activities involving SHAO and other unknown associates. Based on my training and experience, the facts

10

known to me as set forth above, and the amount of methamphetamine seized from SHAO, it is my belief that the SUBJECT DEVICE, contains evidence, contraband, or fruits of these crimes and that this SUBJECT DEVICE has been utilized by SHAO to facilitate the receipt, delivery and distribution of crystal methamphetamine on Guam.

E.    **Summary of Relevant Technology**

32.    CELLULAR OR WIRELESS TELEPHONE: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.    These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.    A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the telephone.    In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.    These capabilities include storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

33.    CACHE: A temporary storage area where frequently accessed data can be stored for rapid access.    Once the data is stored in the cache, future use can be made by accessing the cached copy rather than re-fetching or re-computing the original data, so that the average access time is shorter.

34.    DIGITAL CAMERA:  Digital camera: A digital camera is a camera that records

11

pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

35. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

36. COOKIE: A file that is generated by a website when a user on a remote computer accesses it. The cookie is sent to the user's computer and is placed in a directory on that computer, usually labeled "Internet" or "Temporary Internet Files." The cookie includes information such as user preferences, connection information such as time and date of use, records of user activity including files accessed or services used, or account information. The cookie is then accessed by

12

the website on subsequent visits by the user, in order to better serve the user's needs.

37.    INSTANT MESSAGING (IM): An IM service is a communications service that allows two users to send messages through the Internet to each other in real-time. Users subscribe to a particular messaging service (e.g., AOL Instant Messenger, MSN Messenger) by supplying personal information and choosing a screen-name to use in connection with the service. When logged in to the IM service, users can search for other users based on the information that other users have supplied, and they can send those users messages or initiate a chat session. Most IM services also allow files to be transferred between users, including music, video files, and computer software. Owing to the structure of the Internet, a transmission may be routed through different states and/or countries before it arrives at its final destination, even if the communicating parties are in the same state.

38.    INTERNET: The Internet is a global network of computers and other electronic devices that communicate with each other. Owing to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

39.    LOG FILES: Computer files that contain records about system events and status, the identity and activities of users, and anomalous or unauthorized computer usage. Names for various log files include, but are not limited to: user logs, access logs, audit logs, transactional logs, and cache logs. Logs can also maintain records regarding the identification of users on a network, as well as Internet sites accessed by the computer.

40.    MICRO SD CARD: One of the smallest versions of a Secure Digital memory card and the most popular flash memory card for digital camera and other mobile storage.

41.    SUBSCRIBER IDENTITY MODULE (SIM): Part a removable smart card ICC

13

(Integrated Circuit Card), also known as SIM Cards, for mobile cellular telephony devices such as mobile computers and mobile phones. SIM cards securely store the service-subscriber key (IMSI) used to identify a subscriber. The SIM card allows users to change phones by simply removing the SIM card from one mobile phone and inserting it into another mobile phone or broadband telephony device.

**F.    DIGITAL MEDIA**

42.    Based on my knowledge, training and experience, and information related to me by other law enforcement officers involved in the investigation of drug trafficking offenses, I know digital devices include cellular telephones, tablets, email devices, and personal digital assistants, which usually provide internet and cellular network access. Digital media devices are capable of storing content and data including, but not limited to, numbers (phone numbers and names associated with those numbers), text (in the form of text messages, personal reminders, etc.), picture files (jpeg, gif, bmp, dib, jpg, etc.), music files (midi, wav, mp3, mp4, etc.), movie files (mpg, mpeg, aif, mov, ram, etc.), web history and application data, and any other data capable of being stored on a digital communications device or accompanying removable media; all of which can be reasonably expected to be seized from the digital communication device. Based on my training and experience, individuals who use social networking sites often do so using multiple digital media platforms and a variety of software applications. These include, but are not limited to, social networking websites/applications, internet message boards/forums, and photo/video sharing webpages.

**G.    FORENSIC EVIDENCE**

43.    As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the SUBJECT DEVICE

14

was used, the purpose of its use, who used it, and when. There is probable cause to believe that this forensic electronic evidence might be on the SUBJECT DEVICE because:

44.     Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file). Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active. Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords. Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use. Computer file systems can record information about the dates files were created and the sequence in which they were created.

45.     Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

46.     A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

47.     The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.

15

Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

48.     Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular item is not present on a storage medium.

49.     "Computer" as used herein, is defined pursuant to 18 U.S.C. § 1030(e)(1), as "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device." "Moreover, it is well established that even entry-level cellphones available today are hand-held computers that can access many data formats—e.g., video, audio, text—and include ample storage capacity." *United States v. Carter*, No. 317CR00003LRHWGC, 2017 WL 2407259, at *4 (D. Nev. June 2, 2017), aff'd, 764 F. App'x 630 (9th Cir. 2019). Based on my training and experience, a cellular phone is therefore a "computer."

50.     Data that exists on a cell phone or computer is particularly resilient to deletion. Files or remnants of such files can be recovered months or even years after they have been downloaded onto a cell phone, hard drive, deleted, or viewed via the Internet. Electronic files downloaded to a cell phone or hard drive can be stored for years at little to no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensic tools. When a person "deletes" a file on a cellular phone or home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space – that is, in space on the hard drive that is not allocated to an active file

16

or that is unused after a file has been allocated to a set block of storage space – for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or cache. The browser typically maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages. Thus, the ability to retrieve residue of an electronic file from a cellular phone or hard drive depends less on when the file was downloaded or viewed than on a particular user's operating system, storage capacity, and computer habits.

## H.   **NATURE OF EXAMINATION**

51.    Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the SUBJECT DEVICE consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## I.   **MANNER OF EXECUTION**

52.    Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## J.   **CONCLUSION**

53.    Based on the investigation described above, probable cause exists to believe that SHAO used the SUBJECT DEVICE to communicate and conspire with others to distribute methamphetamine. Due to the persistence of data, there is probable cause to believe that digital

17

artifacts (in the form of file system data; metadata; device activity logs; stored/retained user activity data; login/account credentials; application/program access, download, installation, and deletion history; search and site visit history; browser "favorites" history; internet access/activity and IP address history) will be present on the SUBJECT DEVICE. As such digital artifacts would serve to further connect SHAO to the SUBJECT DEVICE and to applications used to communicate with the others in the conspiracy. These would constitute evidence, fruits, and instrumentalities of a violation of Title 21, United States Code, Sections 841(a)(1) and 846.

54. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the SUBJECT DEVICE described in Attachment A for the information listed in Attachment B.

55. Based on the foregoing, I respectfully submit that there is probable cause to believe that on the property described in Attachment A, there are evidence and instrumentalities of criminal offenses against the United States, to wit: violations of Title 21, United States Code, Sections 841(a)(1) and 846.

## K.    REQUEST FOR SEALING

56. I further request that the Court order that all papers in support of this application, including the affidavit and search warrants, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize that investigation.

57. Based on the forgoing, I request that the Court issue the proposed search warrant. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by Title 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A).

18

Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense[s] being investigated." 18 U.S.C. § 2711(3)(A)(i).

**L.   CONCLUSION**

58.     Based on my training and expertise, I know that drug traffickers frequently use cellular telephones to communicate and discuss illegal activity.  I also know that cellular telephones, specifically the cellular provider described in Attachment A, retain information as to the most recent numbers dialed, duration of calls, and caller identification information from recent incoming calls, voice mail and text messaging.  Additionally, I know that cellular providers keep digital information stored in servers.  This information is necessary to identify associates and other co-conspirators.

59.     Based on my training and experience, I know that in addition to voice communication, people using cellular telephones to facilitate criminal activity can communicate with each other by sending text messages and/or e-mail messages, which can and frequently are stored in the electronic data of the cellular telephone handset and servers.  I believe a review of the text messages, call logs and/or e-mail messages stored in, specifically the server described in Attachment A will provide investigative leads and evidence relevant to this ongoing criminal investigation.

60.     Based on my training and experience and the information contained in this Affidavit, investigators believe that SHAO, is currently involved in the trafficking and distribution of methamphetamine, a violation of Title 21 U.S.C. §§ 841(a)(1) and 846, and that evidence of that criminal activity can be found in the text messages and stored electronic data accessible from specifically the cellular service provider described in Attachment A.

61.     Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that on the SUBJECT DEVICE, there exists evidence of a crime.

19

Accordingly, a search warrant is respectfully requested. This Court has jurisdiction to issue the requested warrant because it is "a court with jurisdiction over the offense under investigation" as defined by Title 18 U.S.C. § 2711, 18 U.S.C. § 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States...that-has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

62. Based on the foregoing, I respectfully submit that there is probable cause to believe that on the property described in Attachment A, there is evidence and instrumentalities of criminal offenses against the United States, to wit: violations of Title 21, United States Code, Sections 841(a)(1) and 846.

FURTHER AFFIANT SAYETH NAUGHT.

Liu Hong Liang
Special Agent
Federal Bureau of Investigation

20

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched is a black Samsung Galaxy Z Fold cellular phone ("SUBJECT DEVICE"). This cellphone was seized from BENZHE SHAO a/k/a BEN ZHE SHAO a/k/a "Tiger," and is currently in the custody of the Federal Bureau of Investigation.

21

<strong><u>ATTACHMENT B</u></strong>

<strong>ITEMS TO BE SEARCHED FOR AND SEIZED</strong>

This warrant authorizes the search of the SUBJECT DEVICE listed in Attachment A for records constituting evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 841(a)(1) and 846 from June 27, 2024 to present, including, but not limited to, the following:

a.    Text messages, voice mails, communication, content, phone logs, emails, records, receipts, notes, ledgers, and other information relating to the offense.

b.    Photographs and videos, including those of co-conspirators.

c.    Contact lists to include telephone numbers and addresses.

d.    User-attribution data to include data reflecting who used or controlled the devices. User-attribution data includes registry information, computer logs, user profiles and passwords, web-browsing history, cookies, electronic mail stored on the computer or device, electronic address books, calendars, instant messaging logs, electronically-stored photographs and video, file structure and user-created documents, including metadata.

e.    GPS, mapping, and other location information that would indicate the location of the device.

f.    Evidence of utilization of messaging applications.

g.    Any data (and metadata thereof), including videos, pictures, files, text documents, websites, browser history, constituting, referencing, or indicating methamphetamine distribution.

h.    Any communications (and metadata and associated data thereof), regardless of direction or location, in which methamphetamine distribution offenses are discussed or planned.

22

i.  Any internet or cellular telephone communications (including e-mail, social media, online chat programs, etc.) in which methamphetamine distribution are discussed or planned.

j.  Evidence of software that would allow others to control the cellular telephones, such as viruses, Trojan horses, and other forms of malicious software.

k.  Evidence of the attachment to cellular telephones of other storage devices, disks, CD-ROMs, or similar containers for electronic evidence.

l.  Data relating to the install date, version, user accounts, and user activity, of the devices' operating system(s) and any applications (including social media, filesharing, chat/messaging applications) that could be used for the receiving, storage, distribution, or viewing of digital files or media.

m.  Any internet browsing or website access history data revealing the search for, or viewing of, websites or information related to methamphetamine distribution, the collection of payment from intended purchasers, and the concealment of the offense.

23